UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ANGELA J. CANADY,

                         Plaintiff,

v.                                                          1:17-CV-0367
                                                            (GTS/WBC)
COMMISSIONER OF SOCIAL SECURITY,

                         Defendant.
_____

APPEARANCES:                                        OF COUNSEL:

OFFICE OF STEPHEN J. MASTAITIS, Jr.        Stephen J. Mastaitis, Jr, Esq.
  Counsel for Plaintiff
1412 Route 9P
Saratoga Springs, NY 12866

U.S. SOCIAL SECURITY ADMIN.                   Andreea Lechleitner, Esq.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278


William B. Mitchell Carter, U.S. Magistrate Judge,

## REPORT and RECOMMENDATION

    This matter was referred for report and recommendation by the Honorable Judge

Suddaby, Chief United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local

Rule 72.3(d).  (Dkt. No. 14.)  This case has proceeded in accordance with General

Order 18.

    Currently before the Court, in this Social Security action filed by Angela J.

Canady ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the

Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-

motions for judgment on the pleadings.  (Dkt. Nos. 11, 13.)  For the reasons set forth below, it is recommended that Plaintiff's motion be denied and Defendant's motion be granted.

## I.    RELEVANT BACKGROUND

### A.    Factual Background

Plaintiff was born in 1968.  (T. 153.)  She completed high school.  (T. 158.) Generally, Plaintiff's alleged disability consists of stage two breast cancer and depression.  (T. 157.)  Her alleged disability onset date is July 2, 2013. (T. 153.)

### B.    Procedural History

On September 30, 2013, Plaintiff applied for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act.  (T. 153.)  Plaintiff's application was initially denied, after which she timely requested a hearing before an Administrative Law Judge ("the ALJ").  On March 18, 2015, Plaintiff appeared before the ALJ, Arthur Patane.  (T. 26-52.)  On July 31, 2015, ALJ Patane issued a written decision finding Plaintiff not disabled under the Social Security Act.  (T. 9-25.)  On February 8, 2017, the Appeals Council ("AC") denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner.  (T. 1-6.)  Thereafter, Plaintiff timely sought judicial review in this Court.

### C.    The ALJ's Decision

Generally, in his decision, the ALJ made the following five findings of fact and conclusions of law.  (T. 14-20.)  First, the ALJ found that Plaintiff had not engaged in substantial gainful activity since September 30, 2013.  (T. 14.)  Second, the ALJ found

that Plaintiff had the severe impairments of breast cancer and mood disorder.  (*Id.*)

Third, the ALJ found that Plaintiff did not have an impairment that meets or medically

equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P,

Appendix. 1.  (T. 14-15.)  Fourth, the ALJ found that Plaintiff had the residual functional

capacity ("RFC") to perform light work except she was limited to frequent, but not

constant, interactions with others.  (T. 15.)[1]  Fifth, the ALJ determined that Plaintiff had

no past relevant work; however, there were jobs that existed in significant numbers in

the national economy Plaintiff could perform.  (T. 19-20.)


## II.    THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A.    Plaintiff's Arguments

Plaintiff makes three separate arguments in support of her motion for judgment

on the pleadings.  First, Plaintiff argues substantial evidence did not support the ALJ's

RFC determination.  (Dkt. No. 11 [Pl.'s Mem. of Law].)  Second, Plaintiff argues the ALJ

erred in his step three determination.  (*Id.*)  Third, and lastly, Plaintiff argues the AC

committed error in failure to remand her case based on new and material evidence.

(*Id.*)

### B.    Defendant's Arguments

---

[1]    Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.  20 C.F.R. § 416.967(b).

In response, Defendant makes four arguments.  First, Defendant argues the ALJ reasonably declined to adopt the opinion of Plaintiff's treating psychiatrist, Arif Shahabuddin, M.D.  (Dkt. No. 13 at 5-13 [Def.'s Mem. of Law].)  Second, Defendant argues the ALJ properly declined to adopt the opinion of Elizabeth Marks, M.D.  (*Id.* at 13-18.)  Third, Defendant argues vocational expert ("VE") testimony was not required.  (*Id.* at 18-19.)  Fourth, and lastly, Defendant argues the AC was not required to remand based on the additional evidence submitted.  (*Id.* at 19-22.)

## III.    RELEVANT LEGAL STANDARD

### A.    Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled.  *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence.  *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

**B.    Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. § 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

(1) whether the claimant is currently engaged in substantial gainful activity;
(2) whether the claimant has a severe impairment or combination of

impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

## IV.    ANALYSIS

For ease of analysis, Plaintiff's arguments will be address out of order and in a consolidated manner.

### A.    ALJ's Weighing of the Medical Opinion Evidence and RFC Determination

The RFC is an assessment of "the most [Plaintiff] can still do despite [her] limitations."  20 C.F.R. § 416.945(a)(1).  In formulating Plaintiff's RFC, the ALJ must assess all of the relevant medical and other evidence in the record.  *Id.* at § 416.945(a)(3).

The opinion of a treating source will be given controlling weight if it "is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record."  20 C.F.R. § 416.927(c)(2)[2]; *see Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015).

The following factors must be considered by the ALJ when deciding how much weight the opinion should receive, even if the treating source is not given controlling

---

[2]    Effective March 27, 2017, 20 C.F.R. § 416.927 has been amended, as have other regulations and SSRs cited herein. Nonetheless, because Plaintiff's social security application was filed before the new regulations and SSRs went into effect, the Court reviews the ALJ's decision under the earlier regulations and SSRs.

weight: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the opinion is from a specialist." 20 C.F.R. § 416.927(c)(2)(i)-(iv). The ALJ is required to set forth his reasons for the weight he assigns to the treating physician's opinion. *Id.*, *see also* SSR 96-2p, 1996 WL 374188 (July 2, 1996); *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000) (quoting *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir.1998)).

Plaintiff argues the ALJ committed legal error in affording more weight the opinion of a non-examining consultant over that of a treating physiatrist and primary care physician. (Dkt. No. 11 at 13 [Pl.'s Mem. of Law].) In conjunction with her argument, Plaintiff asserts, without further explanation or citation to the record that her symptoms and complaints were well documented by her treating providers and their opinions were consistent with each other and the record as a whole. (*Id.* at 12, 14.)[3] Thus, Plaintiff appears to argue substantial evidence supported the treating sources' opinions. Plaintiff's initial argument has been repeatedly rejected by the Court of Appeals for the Second Circuit. Further, for the reasons outlined herein, the ALJ properly afforded Plaintiff's treating providers less than controlling weight and his decision to do so was supported by substantial evidence in the record.

In *Heagney-O'Hara v. Comm'r of Soc. Sec.,* 646 F. App'x 123, 126 (2d Cir. 2016), the Second Circuit held that the ALJ correctly gave great weight to the opinion of a medical expert, over the opinion of a treating source and even though he lacked a

---

[3] "Each contention must be supported by specific reference to the portion of the record relied upon and by citations to statutes, regulations, and cases supporting plaintiff's position." Gen. Order 18.

treating relationship with plaintiff, because his opinion was consistent with the objective medical evidence in the record.  *See also Camille v. Colvin*, 652 F. App'x (2d Cir. 2016) (the regulations permit the opinions of non-examining sources to override the opinions of treating sources provided they are supported by the evidence in the record); *Monette v. Colvin,* 654 F. App'x 516 (2d Cir. 2016); *Snyder v. Colvin,* No. 15-3502, 667 F. App'x 319 (2d Cir. 2016); *Frye ex rel. A.O. v. Astrue*, 485 F. App'x 484, 487 (2d Cir. 2012) ("The report of a State agency medical consultant constitutes expert opinion evidence which can be given weight if supported by medical evidence in the record.").  Therefore, the ALJ did not commit legal error in affording more weight to medical consultants, examining and non-examining, over treating sources.

Here, the ALJ properly afforded less than controlling weight to the opinions of Plaintiff's treating sources.  The ALJ provided good reasons for doing so and his decision was supported by substantial evidence.  Plaintiff's primary care physician, Dr. Marks, completed a physical capacities evaluations form.  (T. 479-480.)  Therein, Dr. Marks opined that in an eight hour workday, Plaintiff could sit for one hour at a time, stand for one hour at a time, and walk for zero hours at a time.  (T. 479.)  She further opined that in an eight hour workday, Plaintiff could sit for a total of one hour, stand for a total of one hour, and walk for a total of zero hours.  (*Id.*)  Dr. Marks indicated Plaintiff would need to change positions "often" and she would have to lie down throughout the day to relieve pain.  (*Id.*)  She stated Plaintiff could occasionally lift and carry up to 10 pounds and never more than 11 pounds.  (*Id.*)  She opined Plaintiff could grasp and do fine manipulation, but never push and pull arm controls.  (*Id.*)  Dr. Marks opined Plaintiff could never use her legs for pushing and pulling.  (T. 480.)

Dr. Marks also provided opinions regarding Plaintiff's nonexertional limitations. She opined Plaintiff could occasionally bend and reach, but never squat, crawl, or climb. (T. 480.)  Dr. Marks stated Plaintiff was "totally restricted" from working at unprotected heights, being around moving machinery, exposure to marked changes in temperature and humidity, driving automotive equipment, and exposure to dust/fumes/gases.  (*Id.*) She opined that Plaintiff's pain was "moderate."  (*Id.*)  Dr. Marks checked the box indicating the limitations were "temporary," as opposed to "permanent"; however, she did not define temporary.  (*Id.*)

The ALJ afforded Dr. Mark's medical opinion "very little weight."  (T. 17.)  The ALJ reasoned that her opinion was not supported by objective clinical and diagnostic findings.  (*Id.*)  The ALJ explained in his determination that Plaintiff's treating providers noted her primary medical issues were sleep difficulty and hot flashes, and objective examinations indicated that Plaintiff did not have any visual problems, dizziness, musculoskeletal issues, or constitutional problems.  (*Id.*)  Indeed, the record contained notations related to Plaintiff's treatment for breast cancer and related symptoms such as hot flashes and poor sleep.  However, the record was essentially silent regarding any specific complaints of, or observations of, limitations that would affect Plaintiff's ability to perform the physical demands of work.

The ALJ discussed Plaintiff's impairments and noted she had Stage II right-sided breast cancer which required surgery in August of 2013 followed by chemotherapy and radiation.  (T. 16-17.)  The ALJ noted that in October of 2013 Plaintiff's oncologist, Rufus Collea, M.D., stated that Plaintiff was at her "baseline state of health and doing well."  (T. 16.)  Plaintiff tolerated chemotherapy "without significant toxicity."  (*Id.*,

referring to T. 400.)  Dr. Collea noted Plaintiff's Karnofsky performance status[4] as

"100% - Normal."  (T. 406.)  He further noted Plaintiff had no complaints.  (*Id.*)  Plaintiff

underwent radiation, which ended in January 2014.  (T. 365, 409.)  Plaintiff had

conservative surgery and a round of chemotherapy after a second breast lump was

discovered.  (T. 367.)  After treatment it was noted that Plaintiff complained of only skin

irritation and fatigue.  (*Id.*)  Plaintiff has since remained cancer free.  (T. 501, 502, 646.)

Despite Dr. Mark's opinion, the record does not contain any indication that

Plaintiff's impairments were as physically limiting as Dr. Marks opined.  Physical exams

were consistently normal and Plaintiff denied musculoskeletal symptoms.  (T. 399, 403,

408, 413, 417, 422.)  Therefore, the ALJ properly concluded that Dr. Mark's opinion was

entitled to "very little weight" because it was not supported by objective clinical and

diagnostic findings.  *Dumas v. Schweiker*, 712 F.2d 1545, 1553 (2d Cir. 1983) ("The

Secretary is entitled to rely not only on what the record says, but also on what it does

not say.").

The ALJ afforded non-examining State agency medical consultant, Dr. Auerbach,

a "good amount of weight."  (T. 16.)  The ALJ reasoned that Dr. Auerbach was an

expert in Social Security "rules and regulations," and his opinion was supported by Dr.

Collea's treatment notations and other treating sources in the record.  (*Id.*)

Dr. Auerbach reviewed the medical record in October of 2013.  (T. 637-639.)  Dr.

Auerbach opined that "assuming [Plaintiff] has no significant sequelae secondary to the

---

[4]    "A standard way of measuring the ability of cancer patients to perform ordinary tasks. The
Karnofsky Performance Status scores range from 0 to 100. A higher score means the patient is better
able to carry out daily activities. Karnofsky Performance Status may be used to determine a patient's
prognosis, to measure changes in a patient's ability to function, or to decide if a patient could be included
in a clinical trial. Also called KPS." NCI Dictionary of Cancer Terms, *National  Cancer Institute at the
National Institutes of Health*, https://www.cancer.gov/publications/dictionaries/cancer-terms?cdrid=44156
last visited Oct. 2, 2017).

chemotherapy (which cannot be determined at this time), there should be no significant impact on the RFC [for light work] within 12 months of the [alleged onset date]."  (T. 637.)  Although Dr. Auerbach never examined Plaintiff, the ALJ properly afforded his opinion a good amount of weight.  As stated herein, the ALJ may rely on the opinion of a consultative examiner over that of a treating physician if the opinion is supported by the longitudinal record.

Dr. Shahabuddin completed a "Psychiatric Review Technique" form and a "Mental Residual Functional Capacity Assessment" form.  (T. 550-567.)  The psychiatric review technique form corresponds to a determination of whether Plaintiff's impairment, or combination of impairments, meets or equals a Listing at step three.  In the psychiatric review technique form, Dr. Shahabuddin checked the box labeled "12.04 Affective Disorders."  (T. 550.)  He then checked the boxes corresponding to the symptoms associated with affective disorders: anhedonia; sleep disturbance; decreased energy; and difficulty concentrating or thinking.  (T. 553.)  Dr. Shahabuddin further checked boxes associated with symptoms under 12.06 Anxiety-Related Disorders.  (T. 555.)  He checked the box "apprehensive expectation" and "a persistent irrational fear of a specific object, activity or situation which results in a compelling desire to avoid the dreaded object, activity, or situation."  (*Id.*)

Dr. Shahabuddin wrote that Plaintiff "experiences panic attacks . . . [a]nxiety prevents [Plaintiff] from engaging in social activities."  (*Id.*)  Dr. Shahabuddin completed the "B" criteria of the Listings section of the form.  (T. 560.)  Dr. Shahabuddin checked that box indicating Plaintiff had "moderate" limitations in her activities of daily living and had episodes of decompensation, each of extended duration.  (*Id.*)  He checked the box

indicating Plaintiff had a "marked" limitation in maintaining concentration, persistence, or pace. (*Id.*) He checked the box indicating Plaintiff had an "extreme" limitation in maintaining social functioning. (*Id.*) Dr. Shahabuddin did not complete the section of the form relating to "C" criteria. (T. 561.) Dr. Shahabuddin wrote that Plaintiff suffered from major depressive disorder, breast cancer, and perimenopause. (T. 562.) He further stated she suffered from anxiety, including panic attacks which were exacerbated by her medical condition. (*Id.*) He noted Plaintiff's symptoms had not improved with medication. (*Id.*)

Dr. Shahabuddin opined in his mental RFC form, that Plaintiff was recovering from cancer and experienced distressing hot flashes. (T. 564.) He opined Plaintiff had mild limitations in her ability to: maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness, and be aware of normal hazards and take appropriate precautions. (T. 566-567.)[5] Dr. Shahabuddin opined Plaintiff had moderate limitations in her ability to: understand and remember very short and simple instructions; carry out very short and simple instructions; make simple work-related decisions; interact appropriately with the general public; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; respond appropriately to changes in the work setting; and set realistic goals or make plans independently of others. (T. 565-567.) He opined Plaintiff had marked limitations in her ability to: remember locations and work-like procedures; understand and remember detailed instructions; carry out detailed instructions; sustain an ordinary routine without special supervision; ask simple

---

[5]        The form contained the following definitions of terms used: mild – there are limitations on ability to function but they are mild or transient; moderate – the ability to function in this area is less than marked but more than mild; marked – the ability to function in this area is seriously limited; and extreme – the ability to function in this area is precluded. (T. 565.)

questions or request assistance; accept instructions and respond appropriately to criticism form supervisors; and tolerate normal levels of stress. (*Id.*) He opined Plaintiff had extreme limitations in her ability to: maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual; work in coordination with or proximity to others without being distracted by them; complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number of and length of rest periods; and travel in unfamiliar places or use public transportation. (*Id.*)

The ALJ afforded Dr. Shahabuddin's opinion "little weight." (T. 18.) The ALJ reasoned that the opinion was not supported by, or consistent with, the longitudinal treating notations and mental status examination findings provided by his office. (*Id*); *see Domm v. Colvin*, 579 F. App'x 27 (2d Cir. 2014) (the Court found that the ALJ had properly pointed to substantial evidence for giving the treating source narrative statement only probative weight, noting that the restrictive assessment was inconsistent with the source's own treatment notes, the conclusion of other medical sources, and plaintiff's testimony regarding her daily functioning).

Indeed, Dr. Shahabuddin's opinions were not supported by his treatment notations. For example, objective mental status examinations consistently indicated Plaintiff's mood as anxious and depressed; however, her speech was normal, her thought process was coherent, her perception/thought was reality-based, her insight and judgment were fair and intact, her impulse control was adequate, her memory was intact, her attention/concentration were intact, her language was intact, and her fund of

knowledge was intact.   (T. 571, 574-575, 578-579, 587-588, 592, 597, 601-602, 606-607, 611-612, 615-616.)  Elsewhere, Plaintiff was described as neat and appropriately attired, cooperative, with normal motor activity, no abnormal thought content, no hallucinations, normal affect, alert, fully oriented, with a normal attention span, normal memory, good insight, good judgment, and normal energy level, Plaintiff's mood was variously described as a sad mood/a mild depressed mood/an anxious mood.  (T. 435-436, 439-440, 442-443, 446-447.)  Dr. Marks noted in June of 2013 that Plaintiff's memory was intact.  (T. 462.)  Therefore, the ALJ properly reasoned that Dr. Shahabuddin's opinion was inconsistent with treatment notations from his practice and other notations made by treating providers.

Dr. Shahabuddin's opinion was also inconsistent with the opinion of the consultative examiner, Neil Berger, Ph.D. and non-examining medical expert Daryl Didio, Ph.D.  Dr. Berger opined Plaintiff could follow and understand simple directions and instruction, maintain a regular schedule, learn new tasks, perform complex tasks, and make appropriate decisions.  (T. 334.)  He further opined Plaintiff had marked limitations on her ability to relate adequately with others and appropriately deal with stress.  (*Id.*)  The ALJ afforded Dr. Berger's opinion that Plaintiff had marked limitations "not much weight" but afforded the remainder of his opinion "much more weight." (T. 17.)  The ALJ properly reasoned that Dr. Berger's marked limitations were not supported by his findings or other evidence in the record.  (*Id.*)

Dr. Didio reviewed the medical record and concluded Plaintiff had no limitations in her ability to: understand and remember simple instructions; carry out simple instructions; make judgments on simple work-related decisions; understand and

remember complex instructions; carry our complex instructions; and make judgements on complex work-related decisions. (T. 629.)[6] Dr. Didio cited specific evidence in the record to support his conclusions. (*Id.*) The doctor opined that Plaintiff had mild to moderate limitations in her ability to: interact appropriately with the public; interact appropriately with supervisors; and interact appropriately with co-workers. (T. 630.) He opined Plaintiff had moderate limitations in her ability to respond appropriately to usual work situations and to changes in a routine work setting. (*Id.*) The ALJ afforded Dr. Didio's opinion "great weight." (T. 18.) The ALJ reasoned that Dr. Didio's opinion was supported by the evidence in the record. (*Id.*)

Overall, the ALJ properly afforded weight to the various medical opinion evidence in the record. The ALJ did not commit legal error, as Plaintiff suggests, merely because he afforded more weight to a non-treating source over a treating source. Here, the ALJ thoroughly outlined all of the evidence in the record pertaining to Plaintiff's physical and mental health treatment. The ALJ summarized the medical opinion evidence and provided good reasons for affording the opinions various amounts of weight. As stated herein, the ALJ properly afforded Dr. Mark's opinion less weight because it was not supported by evidence in the record which contained no notations of physical limitations beyond complaints of fatigue and hot flashes. Further, the ALJ properly afforded less weight to Dr. Shahabuddin because his opinion was not supported by treatment notations or other notations in the record. The ALJ properly afforded the non-treating

---

[6]   The form completed by Dr. Didio contained the following definitions: mild – there is a slight limitation in this area, but the individual can generally function well; moderate – there is more than a slight limitation in this area but the individual is still able to function satisfactorily; marked – there is a serious limitation in this area, there is substantial loss in the ability to effectively function; and extreme – there is major limitation in this area, there is no useful ability to function in this area. (T. 629.)

source opinions great weight because they were consistent with, and supported by, the evidence in the record as outlined by the ALJ.  Therefore, it is recommended that the ALJ's weight determinations be upheld.

Specifically, the ALJ's physical RFC determination, that Plaintiff could perform a full range of light work, was supported by substantial evidence in the record.  As outlined herein, the ALJ properly afforded less than controlling weight to Dr. Mark's restrictive medical source statement and instead relied on the opinion of Dr. Auerbach and the longitudinal medical record in formulating his physical RFC determination.

The ALJs' mental RFC determination was supported by substantial evidence in the record as well.  The ALJ properly relied on the medical opinion evidence provided by Dr. Didio to support the mental RFC determination that Plaintiff was capable of work that was limited to frequent, but not constant, interaction with others.  (T. 15.)  The mental RFC determination was supported by not only Dr. Didio's opinion, but also by other evidence in the record and Plaintiff's assertions regarding social interactions.  For example, mental health treatment records noted Plaintiff was taking steps to get out of the house more often and was beginning a computer class.  (T. 448.)  Subsequent notations stated Plaintiff was "doing better at leaving the house more often" and she was "getting out of the house more now that her chemo is over and her hair is growing back."  (T. 451-452.)

Plaintiff appears to make the corollary argument that the ALJ committed legal error because he failed to provide a function-by-function analysis as part of the RFC assessment.  (Dkt. No. 11 at 19 [Pl.'s Mem. of Law].)  Plaintiff's argument is without merit.  The Second Circuit has held that the failure to explicitly engage in a function-by-

function analysis as part of the RFC assessment does not constitute a *per se* error requiring remand.  *See Chichocki v. Astrue,* 729 F.3d 172, 174 (2d Cir.2013).

Plaintiff also appears to argue the ALJ erred in his RFC assessment because he failed to consider fatigue as a non-exertional impairment.  (Dkt. No. 11 at 15, 20 [Pl.'s Mem. of Law].)  The ALJ specifically noted that Plaintiff's primary medical issues after her cancer were sleep difficulty and hot flashes.  (T. 17.)  Although the record contained numerous notations of complaints due to hot flashes and fatigue, the record did not support the contention that her symptoms resulted in functional limitations greater than those imposed by the ALJ.  For example, in February of 2014, Plaintiff complained of fatigue and hot flashes, but indicated she was able to maintain her activities of daily living without difficulty.  (T. 538.)  In March of 2015, Plaintiff reported medication improved her sleep significantly.  (T. 613.)  It is therefore recommended that the ALJ's RFC determination be upheld.

### B.    The ALJ's Step Three Determination

When an ALJ determines that a plaintiff has a severe mental or physical impairment at step two of the disability evaluation procedure, the ALJ must then determine whether the impairment meets the criteria of any impairment listed in Appendix 1. 20 C.F.R. § 416.920(a)(4)(iii)(d).  The impairments listed in Appendix 1 are considered severe enough to prevent a plaintiff from doing any gainful activity. *Id.* at § 404.1525(a). If a plaintiff's impairment, or combination of impairments, matches one listed in Appendix 1, and satisfies the duration requirement in 20 C.F.R. 416.909, then the ALJ should generally find the plaintiff disabled without considering the plaintiff's age, education, and work experience.  *Id.* at § 416.920(d).

To match an impairment listed in Appendix 1, a plaintiff's impairment "must meet all of the specified medical criteria" of a listing. *Sullivan v. Zebley*, 493 U.S. 521, 530, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990) (citing 20 C.F.R. § 404 Subpt. P, App. 1). "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Id.* An impairment may also be "medically equivalent" to a listed impairment if it is "at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 416.926(a). Although an ALJ may award benefits at step three, a plaintiff who fails to prove her impairment matches or equals one listed in Appendix 1 is not denied benefits, but rather, the ALJ must proceed to step four. *See id.* at § 404.1520(e).

Plaintiff's argument regarding any potential errors at step three is disjointed. Plaintiff indicates in her statement of the issues, that her mental impairments meets or equals Listing §§ 12.04 and 12.06. (Dkt. No. 11 at 1 [Pl.'s Mem. of Law].) However, the remainder of Plaintiff's brief does not further elaborate on this argument. Plaintiff does outline, in her medical summary section, Dr. Shahabuddin's opinion including his opinion that Plaintiff meets the requirement of Listing §§ 12.04 or 12.06. (*Id.* at 6-7.) And elsewhere Plaintiff argues, as outlined above, that the ALJ erred in affording Dr. Shahabuddin's opinion less than controlling weight. (*Id.* at 14.) Therefore, when pieced together, Plaintiff appears to argue the ALJ failed to afford Dr. Shahabuddin's opinion, that Plaintiff met a Listing, controlling weight. For the reasons already discussed herein, the ALJ afforded proper weight to Dr. Shahabuddin's opinion.

Overall, the ALJ's step three determination, that Plaintiff's impairment did not meet or equal a Listing was proper and supported by substantial evidence. In making his step three determination the ALJ relied on the medical evidence provided by Dr.

Bergen, Dr. Didio, and Plaintiff's treating mental health providers.  (T. 14-15.)  At step

three, the ALJ properly applied the special technique, thoroughly outlined his reasoning,

and provided specific citation to the record to support his determination.  (T. 14-15.)

Therefore, it is recommended that the ALJ's step three determination be upheld.

### C.    The ALJ's Credibility Determination

A plaintiff's allegations of pain and functional limitations are "entitled to great

weight where ... it is supported by objective medical evidence."  *Rockwood v. Astrue*,

614 F. Supp. 2d 252, 270 (N.D.N.Y. 2009) (quoting *Simmons v. U.S. R.R. Ret. Bd.*, 982

F.2d 49, 56 (2d Cir.1992)).  However, the ALJ "is not required to accept [a plaintiff's]

subjective complaints without question; he may exercise discretion in weighing the

credibility of the [plaintiff's] testimony in light of the other evidence in the record."

*Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (citing *Marcus v. Califano*, 615 F.2d 23,

27 (2d Cir.1979)).  "When rejecting subjective complaints, an ALJ must do so explicitly

and with sufficient specificity to enable the Court to decide whether there are legitimate

reasons for the ALJ's disbelief."  *Rockwood*, 614 F. Supp. 2d at 270.

The ALJ must employ a two-step analysis to evaluate the claimant's reported

symptoms.  *See* 20 C.F.R. § 416.929.  First, the ALJ must determine whether, based on

the objective medical evidence, a plaintiff's medical impairments "could reasonably be

expected to produce the pain or other symptoms alleged."  *Id.* at § 416.929(a).  Second,

if the medical evidence establishes the existence of such impairments, the ALJ must

evaluate the intensity, persistence, and limiting effects of those symptoms to determine

the extent to which the symptoms limit the claimant's ability to do work.  *See id.*

At this second step, the ALJ must consider: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to relieve his pain or other symptoms; (5) other treatment the claimant receives or has received to relieve his pain or other symptoms; (6) any measures that the claimant takes or has taken to relieve his pain or other symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to his pain or other symptoms.  20 C.F.R. § 416.929(c)(3)(i)-(vii).

The ALJ determined Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, her statements concerning the intensity, persistence and limiting effects of these symptoms were not entirely credible.  (T. 16.)

Throughout her brief, Plaintiff raises various arguments asserting the ALJ erred in his credibility determination.  First, Plaintiff argues the ALJ "completely failed to analyze and discuss [Plaintiff's] credible testimony concerning persistent and unpredictable hot flashes insomnia and fatigue, which are all supported by medical records from multiple treating sources."  (Dkt. No. 11 at 17 [Pl.'s Mem. of Law].) Plaintiff's argument is without merit.  The ALJ outlined and discussed Plaintiff's testimony, including complaints made to treating sources, regarding her symptomology and alleged limiting affects.  (T. 15-17.)  Therefore, the ALJ did not "completely fail" to discuss Plaintiff's testimony regarding her symptoms.

Second, Plaintiff asserts her limited activities of daily living support a finding of disability.  (Dkt. No. 11 at 17 [Pl.'s Mem. of Law].)  Although Plaintiff provides case law to support her contention, Plaintiff failed to provide citation to the decision or the record. "The issue is not whether Plaintiff's limited ability to undertake normal daily activities demonstrates her ability to work. Rather, the issue is whether the ALJ properly discounted Plaintiff's testimony regarding her symptoms to the extent that it is inconsistent with other evidence." *Morris v. Comm'r of Soc. Sec.,* No. 5:12-CV-1795, 2014 WL 1451996, at *8 (N.D.N.Y. Apr. 14, 2014).  Here, the ALJ cited to medical evidence in the record indicating Plaintiff's activities of daily living were not as restrictive as Plaintiff asserted, thus properly discounting her testimony to the extent that it was inconsistent with other evidence.  The ALJ relied on treatment notation from Dr. Collea which indicated Plaintiff was able to live by herself and maintain adequate activities of daily living such as cleaning, shopping, and doing laundry.  (T. 16.)

Third, Plaintiff assert that an ALJ was not allowed to discredit her statements based on personal observations made during the hearing.  (Dkt. No. 11 at 18-19 [Pl.'s Mem. of Law].)  Again, Plaintiff fails to provide citation to the record to support her assertion.  The ALJ makes no mention of personal observations made during the hearing in his decision.  Therefore, Plaintiff's argument is without merit.

Lastly, Plaintiff argues her subjective symptoms were consistent with her treatment history and therefore should be given full credit.  (Dkt. No. 11 at 19 [Pl.'s Mem. of Law].)  However, treatment is only one factor considered by the ALJ in making a credibility determination.  20 C.F.R. § 416.929(c)(3)(v).  Here, the ALJ discussed

treatment Plaintiff received for her impairments and considered it, together with other factors, in making a credibility determination.  (T. 16-17.)

For the reasons stated herein, and further outlined in Defendant's brief, it is recommended that the ALJ's credibility determination be upheld.

### D.    Evidence Submitted to the AC

"[N]ew evidence submitted to the [AC] following the ALJ's decision becomes part of the administrative record for judicial review when the [AC] denies review of the ALJ's decision." *Perez v. Chater*, 77 F.3d 41, 45 (2d Cir.1996).  "The only limitations stated in [20 C.F.R. § 416.1470(b) ] are that the evidence must be new and material and that it must relate to the period on or before the ALJ's decision."  *Perez*, 77 F.3d at 45.

Once evidence is added to the record, the AC must then consider the entire record, including the new evidence, and review a case if the "administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record."  20 C.F.R. § 404.970(b).  If the AC denies review of a case, the ALJ's decision, and not the AC's decision, is the final agency decision.  *See Perez*, 77 F.3d at 44. When the AC denies review in a case, the review focuses on the ALJ's decision. *Lesterhuis v. Colvin*, 805 F.3d 83, 87 (2d Cir. 2015); *see* 42 U.S.C. § 405(g) ("Any individual, after any final decision of the Commissioner ..., may obtain a review of such decision by a civil action...." (emphasis added)).

A district court's review is based on the entire administrative record, including any new evidence submitted to the AC following the ALJ's decision.  *See Perez*, 77 F.3d at 45.  Thus, as in this case, when the AC denies review after considering new evidence, the court "simply review[s] the entire administrative record, which includes the

new evidence, and determine[s], as in every case, whether there is substantial evidence

to support the decision of the [Commissioner]."  *Id.* at 46; *Lesterhuis*, 805 F.3d 87.

Plaintiff argues that the AC erred in failing to remand the matter to the ALJ based on

new evidence.  (Dkt. No. 11 at 20-21 [Pl.'s Mem. of Law].)  Plaintiff asserts the AC erred

because they "refused to recognize" or discuss the new evidence in "any meaningful

way."  (*Id.* at 20.)

  The Second Circuit in *Lesterhuis* clearly stated that when new evidence is

submitted to the AC and the AC denies review, the reviewing court's role is to review

the entire administrative record, including the new evidence, and determine whether

substantial evidence supported the Commissioner's final decision.  *Lesterhuis*, 805 F.3d

87.  Therefore, this Court will review the ALJ's determination, not the AC's

determination, in light of the new evidence as directed by *Lesterhuis*.  *See Pelow v.

Colvin*, No. 6:14-CV-06529, 2015 WL 8516555, at *3 (W.D.N.Y. Dec. 11, 2015) ("This

Court must thus determine whether substantial evidence supports the ALJ's decision,

when the new evidence from [plaintiff] is included in the administrative record.); *Ryder v.

Colvin*, No. 1:15-CV-00241, 2015 WL 9077628, at *4 (W.D.N.Y. Dec. 16, 2015) ("This

Court must thus determine whether substantial evidence supports the ALJ's decision,

when the new evidence is included in the administrative record.  Because the ALJ's

decision was the final agency decision, the Court will not address plaintiff's arguments

regarding the Appeals Council's alleged errors in considering the new evidence.").

  The Second Circuit has held that the AC did not err in refusing review based on

new evidence because the new evidence did not alter the weight of the evidence so

dramatically as to require the AC to take the case.  *Bushey v. Colvin*, 552 F. App'x. 97,

98 (2d Cir. Jan. 29, 2014) ("We do not believe that the Appeals Council erred by refusing to review the ALJ's decision in light of the new evidence that Bushey submitted to that body.  The Appeals Council had substantial evidence supporting its decision to decline review, as the new evidence that Bushey presented did not alter the weight of the evidence so dramatically as to require the Appeals Council to take the case.").

Accordingly, the issue before the Court is whether the new evidence altered the weight of the evidence before the ALJ so dramatically as to require the AC to take the case.  This Court finds that it did not and recommends that the ALJ's determination be upheld.

The AC indicated that it considered the evidence submitted by Plaintiff, but found that the information did not provide a basis for disturbing the ALJ's decision.  (T. 2.)  The evidence was then included in the record before this Court.  (T. 653-732.)  The evidence included additional notations from Plaintiff's mental health treatment providers dated April 24, 2015 through July 17, 2015.  (T. 653-706.)  Of note, included in those records were records dated October 2013, which was already in the record before the ALJ.  (T. 277.)  Plaintiff also filed additional treatment notations from her oncologist dated June 29, 2015 through September 9, 2015.  (T. 707-732.)  The additional evidence does not alter the weight of the evidence as to require remand.

As an initial matter, Plaintiff only argues remand is warranted because the AC failed to discuss the new evidence.  (Dkt. No. 11 at 20-21 [Pl's Mem. of Law].)  As outlined above, the ALJ's determination is the final determination of the Commissioner and therefore only the ALJ's determination will be reviewed.

Overall, the new evidence did not alter the weight of the evidence.  The treatment notations provided by Plaintiff's mental health providers noted Plaintiff's mood was depressed/anxious, her speech was normal, her thought process was coherent, her perception/though content was reality-based, her insight and judgment were fair and intact, her memory was intact, her language was intact, and her sleep was adequate. (T. 660-661, 665-666, 670-671, 675-676, 680-681.)  Plaintiff reported her sleep was good with medication.  (T. 663, 668, 673, 678.)  Treatment notations from Plaintiff's oncologist consisted of test results and routine follow-ups.  (T. 707-732.)  Dr. Collea indicated that Plaintiff was "well" and "stable."  (T. 708, 709.)  The evidence clearly would not alter the ALJ's determination and therefore it is recommended that the ALJ's determination be upheld.

In sum, the ALJ properly weighed the medical opinion evidence in the record and his RFC determination was supported by substantial evidence.  The ALJ also properly evaluated Plaintiff's credibility.  Substantial evidence supported the ALJ's step three determination.  And lastly, the additional evidence submitted to the AC would not have altered the ALJ's determination.  Therefore, it is recommended that the ALJ's determination be upheld.

**ACCORDINGLY**, based on the findings above, it is

**RECOMMENDED**, that the Commissioner's decision be **AFFIRMED**, and the Plaintiff's complaint **DISMISSED.**

Pursuant to 28 U.S.C. § 636 (b)(1) and Local Rule 72.1(c), the parties have **FOURTEEN (14) DAYS** within which to file written objections to the foregoing report. Any objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO**

**THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**.

*Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636 (b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated:        October 4, 2017

William B. Mitchell Carter
U.S. Magistrate Judge